UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, and<br>LILLY INDUSTRIES LIMITED,<br><br>Plaintiffs,<br><br>vs.<br><br>ZENITH GOLDLINE<br>PHARMACEUTICALS, INC.,<br>DR. REDDY'S LABORATORIES, INC.,<br>and TEVA PHARMACEUTICALS USA,<br>INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:01-cv-00443-RLY-DKL |

**ENTRY ON PLAINTIFFS' MOTION TO REOPEN ACTION**

On May 9, 2005, the court issued its Amended Final Judgment and Order in favor of the Plaintiffs, Eli Lilly and Company and Lilly Industries Limited (collectively "Lilly"), and against the Defendants, Dr. Reddy's Laboratories, Ltd. ("DRL") and Teva Pharmaceuticals USA, Inc. ("Teva") (collectively "Defendants").[1] Specifically, the court held that Lilly's U.S. Patent No. 5,229,382, which claims, *inter alia*, the chemical compound known as olanzapine, was valid and enforceable. The court also issued a permanent injunction against the Defendants, enjoining them from "infringing, contributing to, or inducing infringement of the '382 patent before its expiration [in

---

[1] Defendant Zenith Goldline Pharmaceuticals, Inc. was later acquired by Defendant Teva Pharmaceuticals USA, Inc.

1

2011], including making, using, selling, offering for sale, or importing olanzapine." (Filing No. 33, Amended Final Judgment).

On May 9, 2016, during a trial in the Federal Court of Canada between *Teva Canada Limited and Eli Lilly Canada, Inc. et al.* over Lilly's Canadian olanzapine patent, Mr. Rajesh Sadanandan of DRL testified regarding an invoice and packing slip issued from DRL's sales department in Bridgeport, New Jersey. (Filing No. 84-2, Testimony of Rajesh Sadanandan ("Sadanandan Test.") at 785, 792). These documents, dated September 11, 2006, reflect a sale of 15,000 kg. of olanzapine to Novopharm Limited (now Teva) in Ontario, Canada. (Filing No. 115-7, Invoice and Packing Slip). Although Mr. Sadanandan acknowledged that the invoice and packing slip would accompany the product when it is shipped, he could not verify where the olanzapine was shipped from without the Air Waybill. (Sadanandan Test. at 789). "Most of the time," he said, "the product [sic] manufactured in India, so the product gets shipped from India directly to the customer's site. It is only the invoicing that happens in the U.S. office." (*Id.*). Upon further questioning, he was forced to acknowledge that some orders are invoiced from India. (*Id.* at 790). The salient testimony is as follows:

> Q: You would agree with me that Dr. Reddy's sometimes would issue issues [sic] out of India and sometimes out of Bridgewater?
>
> A: Yes, sir.
>
> Q: Do you wish to correct the previous statement they were always issued out of Bridgewater regardless of where they were shipped from?

> A: Yes. You are right in that sense, but I need to explain that. The thing is these quantities which are being supplied is for the commercial lots. When it get to commercial and if in that country you are not allowed to send commercially from that market, we invoice it out of India.
>
> Q: But you did invoice in 2006 out of the U.S., did you not?
>
> A: Yes. That was only for developmental purpose [sic].
>
> Q: No, it wasn't, sir. The evidence here is that material was sold commercially. It is the evidence of Teva. Do you wish to dispute that? Or did Teva breach some agreement you had with them?
>
> A: I am not aware of that.

(*Id.*).

Mr. Sadanandan's testimony also raises an inference that, in addition to the September 11, 2006 invoice and packing slip addressed above, other invoices and packing slips were issued out of the sales department of DRL's office in Bridgewater, New Jersey, indicating sales of olanzapine that were made to Teva by DRL. (*Id.* at 785, 792 ("Q: Who would have issued those invoices in Bridgewater, New Jersey, in 2006? A: I would not know, sir."); *see also* Affidavit of Anthony G. Creber ¶ 21) (noting other invoices and packing slips were admitted during the Canadian trial). And, despite being an employee of DRL responsible for sales in North America, he was unaware of this court's May 9, 2005 Order and did not change his business practices as a result of the Order. (Sadanandan Test. at 785-88, 791-92). Based on this testimony, Plaintiffs filed the present motion to reopen these proceedings and institute a civil contempt action against the Defendants for the sale of olanzapine in the United States during the life of the '382 patent.

3

In DRL's Response, it submitted the Air Waybill which was not before Mr. Sadanandan. (*See* Filing No. 115-9, Air Waybill). It shows the shipper as "Dr. Reddy's Laboratories Ltd." from Andhra Pradesh, India, and the consigner as "Novopharm Ltd." from Ontario Canada. (*Id.*). Both Teva and DRL argue, *inter alia*, that (1) the Air Waybill is conclusive proof that no sale of olanzapine occurred in the United States before the expiration of the '382 patent, and (2) Lilly's contempt assertion is time-barred.

To hold a patent contempt proceeding, the injured party must provide a "detailed accusation . . . setting forth the alleged facts constituting contempt." *Tivo, Inc. v. Echostar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2011). Although the Federal Circuit did not address how much information is required to constitute a "detailed accusation," the court finds Lilly's motion, Mr. Sadanandan's testimony, and the documents in evidence are sufficient to reopen this case for the limited purpose of a civil contempt proceeding.

The court further finds, at this early stage of the litigation, that the statute of limitations is not an impediment to reopening this case. There is no fixed statutory period for a civil contempt action. Therefore, the court "may borrow suitable periods of limitations from other statutes as a matter of federal law." *Smith v. Chicago*, 769 F.2d 408, 411 (7th Cir. 1985) (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158–63 & n. 13 (1983)). Defendants argue the six-year statute of limitations applicable to patent infringement actions[2] applies. Lilly disagrees. Contempt

---

[2] 35 U.S.C. § 286 provides: "Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement of the action."

4

proceedings, they argue, are a "subsequent proceeding to enforce the judgment (and injunction)" in the original case, and those proceedings render the original action "pending again." *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977). Here, Lilly maintains it first learned of the 2006 shipment just last year. At this early stage, the court will not bar Lilly's contempt action for violation of this court's Order based on the statute of limitations. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) ("The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury)."); *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (noting the statute of limitations under the Copyright Act "starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights").

For the reasons set forth above, Lilly's Motion to Reopen Action (Filing No. 82) is **GRANTED** for the limited purpose of considering Lilly's Motion for an Order Directing DRL and Teva to Show Cause Why They Should Not be Held in Contempt of Court.

**SO ORDERED** this 14th day of April 2017

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

5